UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEVEN HALL,

      Plaintiff,                           Civil Action No. 12-10316

      v.                                    District Judge Nancy G. Edmunds
                                                   Magistrate Judge Laurie J. Michelson

SCOTT HOLMES, et al.,

      Defendants.
_____/

**REPORT AND RECOMMENDATION TO GRANT DEFENDANTS' MOTIONS TO DISMISS PLAINTIFF'S EIGHTH AMENDMENT CLAIM (DKTS. 19, 23), DENY DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT AND/OR DISMISSAL BASED ON FAILURE TO EXHAUST (DKTS. 20, 22, 23), AND DENY PLAINTIFF'S MOTIONS IN REBUTTAL (DKTS. 27, 30)**

      Plaintiff Steven Hall brought this prisoner civil rights case alleging that Defendants Michigan Department of Corrections ("MDOC") Bureau of Health Care Services and several doctors, nurses and prison employees violated his Eighth Amendment rights by depriving him of necessary medication for his cervical dystonia and/or spasmodic torticollis.[1] (Dkt. 1, Compl.) On May 3, 2012, Defendants Holmes, Squier and Brady filed a Motion to Dismiss arguing that Plaintiff failed to state an Eighth Amendment violation, and failed to satisfy the state statutory requirements for a medical malpractice claim. (Dkt. 19, Defs.' Mot. Dismiss.) On May 4, 2012, Defendants MDOC Bureau of Health Care Services, Stieve, Duncan, Mangus, Kopka, Pigg and Kinder ("MDOC Defendants") filed a Motion for Summary Judgment alleging Plaintiff failed to exhaust his

---

[1] "Cervical dystonia, also called spasmodic torticollis, is a painful condition in which your neck muscles contract involuntarily, causing your head to twist or turn to one side." http://www.mayoclinic.com/health/spasmodic-torticollis/DSOO836.

administrative remedies. (Dkt. 20, Defs.' Mot. Summ. J.) Defendants Holmes, Squire and Brady joined that motion on May 7, 2012. (Dkt. 22, Defs.' Mot. Dismiss.) On May 10, 2012, Defendant Gauderer filed a Motion to Dismiss based on all the above-stated arguments. (Dkt. 23, Def. Gauderer Mot. Dismiss.) In Response to the first Motion to Dismiss filed by Holmes, Squier and Brady, Plaintiff filed a series of responses and replies including a Motion Rebutting/Replying to the Motion to Dismiss. (Dkt. 30, Pl.'s Mot.) Likewise, in response to Defendants' various motions regarding exhaustion, Plaintiff filed a Motion Rebutting Defendants' Motion for Summary Judgment on the Issue of Grievances. (Dkt. 27, Pl.'s Mot.) The Court has considered the six motions and corresponding responses. (Dkts. 19, 20, 22, 23, 25, 26, 27, 29, 30, 31, 32.) For the reasons set forth below, this Court RECOMMENDS that the District Court GRANT Defendant Holmes, Squier and Brady's Motion to Dismiss on the merits of Plaintiff's Eight Amendment claim (Dkt. 19), DENY the MDOC Defendants' Motion for Summary Judgment based on failure to exhaust (Dkt. 20), DENY Defendants Holmes, Squire and Brady's Motion to Dismiss based on failure to exhaust (Dkt. 22), GRANT IN PART and DENY IN PART Defendant Gauderer's Motion to Dismiss (Dkt. 23), and DENY Plaintiff's Motions Rebutting Defendants' Motions (Dkts. 27, 30).

## I. BACKGROUND

Plaintiff Hall suffers from cervical dystonia and/or torticollis. On June 18, 2010, while incarcerated at the Florence Crane Correctional Center (ACF), Plaintiff filed his first two of several grievances regarding MDOC and Corizon staffs' refusal to provide the proper pain medication for his condition. (Dkt. 25, Exs. A, H; Dkt. 30, Ex. A.)[2] MDOC transferred Plaintiff to its Carson City

---

[2] Appendix A attached hereto lists all nine grievances Plaintiff filed, with their numbers (if available), a brief description of the grievance, the date the Court used, along with the docket number wherein the date was discovered, and a statement regarding whether the grievance was

Correctional Facility (DRF), where Plaintiff filed seven additional grievances essentially claiming that the decision by various MDOC and Corizon staff to stop prescribing Seorquel and Baclofen amounted to cruel and unusual punishment. (Dkt. 25, Exs. C, J, K, L, M; Dkt. 30, Ex. Z1.) Due to his numerous grievances, Defendant Duncan ultimately placed Plaintiff on "modified access," which restricted his ability to access additional grievance forms. (Dkt. 27, Pl.'s Mot.) This modified access restriction continued through Plaintiff's transfer to Gus Harrison Correctional Facility (ARF). Plaintiff filed this suit on January 24, 2012. (Dkt. 1, Compl.) MDOC released Plaintiff from custody on February 7, 2012.[3]

## II. ANALYSIS

### A. Legal Standards

#### *1. Summary Judgment*

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material only if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). On a motion for summary judgment, the Court must view the evidence, and any reasonable inferences drawn from the evidence, in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted); *Redding v. St. Edward*, 241 F.3d 530, 531 (6th

---

exhausted.

[3] Per the Offender Tracking Information System (OTIS), MDOC released Plaintiff on February 7, 2012. http://mdocweb.state.mi.us. Accordingly, although not raised by any Defendant in this case, only Plaintiff's claims for damages are not moot. *Miller v. Ghee, et al.*, 22 F. App'x. 388, 389 (6th Cir. 2001).

Cir. 2001).

The moving party has the initial burden of demonstrating an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party carries this burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587. The Court must determine whether the evidence presents a sufficient factual disagreement to require submission of the challenged claims to a jury or whether the moving party must prevail as a matter of law. *Anderson*, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.").

### 2. Fed. R. Civ. P. 12(b)(6)

Under Fed. R. Civ. P. 12(b)(6), a case warrants dismissal if it "[f]ails to state a claim upon which relief can be granted." When deciding a motion under Rule 12(b)(6), "[t]he court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true," and determine whether the plaintiff has alleged "enough factual matter" to "state a claim to relief that is plausible on its face." *Cline v. Rogers*, 87 F.3d 176, 179 (6th Cir. 1996); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "Where a complaint pleads facts that are merely consistent with a defendant's liability," it has failed to show that relief is plausible as opposed to a "sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks omitted). In applying this rule to pro se plaintiffs, the Court is mindful that allegations in the complaint are held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, 28 U.S.C. § 1915(e)(2) "mandates that a complaint filed by a prisoner proceeding in forma pauperis be

dismissed with prejudice if it is frivolous or fails to state a claim." *Hix v. Tenn. Dept. of Corrs.*, 196 F. App'x 350, 354 (6th Cir. 2006) ("When a district court determines that a complaint . . . fails to state a claim, the court lacks discretion under the PLRA to permit the plaintiff to file an amended complaint."). Thus, under 28 U.S.C. § 1915(e)(2) this Court may *sua sponte* dismiss Plaintiff's Complaint if it determines that the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. Where, as here, a plaintiff is proceeding without the assistance of counsel, the Court liberally construes the complaint and holds Plaintiff to less stringent pleading standards than those imposed upon an attorney. *Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). Even so, pro se complaints must still satisfy basic pleading requirements. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989).

### 3. Exhaustion under the Prisoner Litigation Reform Act ("PLRA")

The failure to exhaust is an affirmative defense to a civil suit brought by a prisoner. *Jones v. Bock*, 549 U.S. 199, 216 (2007). More specifically, the Prisoner Litigation Reform Act ("PLRA") bars a civil rights action challenging prison conditions until the prisoner exhausts "such administrative remedies as are available." 42 U.S.C. § 1997e(a); *see also Jones*, 549 U.S. at 918-19 ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."). The exhaustion requirement is justified on two grounds. First, it gives prisoners "an effective incentive to make full use of the prison grievance process and accordingly provides prisons with a fair opportunity to correct their own errors." *Woodford v. Ngo*, 548 U.S. 81, 94 (2002). Additionally, the requirement "has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful

administrative record." *Jones*, 549 U.S. at 204.

The exhaustion prerequisite applies to all inmate suits about prison life – regardless of the nature of the wrong or the type of relief sought. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 741 (2001) (rejecting claim that prisoner had no duty to exhaust where monetary damages could not be awarded through the administrative process; reasoning that "Congress meant to require procedural exhaustion regardless of the fit between a prisoner's prayer for relief and the administrative remedies possible."). Moreover, the prisoner must "properly" exhaust his claims, which requires "'complet[ing] the administrative review process in accordance with the applicable procedural rules'– rules that are defined not by the PLRA, but by the prison grievance process itself. " *Jones*, 549 U.S. at 218 (quoting *Woodford*, 548 U.S. at 88) ("Compliance with prison grievance procedures . . . is all that is required by the PLRA to 'properly exhaust.'").

MDOC Policy Directive 03.02.130 (effective July 9, 2007) ("Policy Directive") sets forth the procedures that govern the grievances filed by Plaintiff, including the requirement that dates, times, places and names of all those involved in the issue being grieved be included. (Dkt. 48, Stieve Mot. for Summ. J., Ex. A.) Moreover, Plaintiff is required to follow the grievance process detailed in MDOC Policy Directive 03.02.130 to its conclusion – a resolution of his Step III appeal – prior to filing a civil suit. *Dean v. Prison Health Services*, No. 10-14135, 2011 WL 1630114 (Mar. 28, 2011) *report adopted by*, 2011 WL 1627336 (E.D. Mich. Apr. 28, 2011).

Defendants have both the burden of proof and the burden of persuasion on the failure to exhaust affirmative defense. *Surles v. Andison*, 678 F.3d 452, 455-56 (6th Cir. 2012.) As such, Defendants must do more than merely "present facts that if true would support the affirmative defense." *Id*. at 456. Defendants must affirmatively prove that Plaintiff failed to exhaust his

administrative remedies. *Id*.

## B. Plaintiff's Eighth Amendment Claim Fails as a Matter of Law

Plaintiff alleges that Defendants' approach to his medical treatment constitutes cruel and unusual punishment under the Eighth Amendment. To prevail on this Eighth Amendment claim, Plaintiff must show that Defendants acted with "deliberate indifference to his serious medical needs." *Bowman v. Corrections Corp. of Am.*, 350 F.3d 537, 544 (6th Cir. 2003) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). Deliberate indifference is a "reckless disregard of a substantial risk of serious harm." *Rumsey v. Michigan Dept. of Corrections*, 327 F. Supp. 2d 767, 777 (E.D. Mich. 2004). "Mere negligence or malpractice is insufficient to establish an Eighth Amendment violation." *Bowman*, 350 F.3d at 544. The inquiry into whether a prison official acted with deliberate indifference has both an objective and subjective component. *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). In order to satisfy the objective component, the prisoner must show that the medical need is "sufficiently serious." *Id*. at 702-03 (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). To satisfy the subjective component, the prisoner must allege facts that show that the prison official had a "sufficiently culpable state of mind." *Farmer* 511 U.S. at 834; *Comstock*, 273 F.3d at 703. Plaintiff must show that the official action amounted to a substantial risk to the prisoner, that the official drew the inference regarding that risk, and that the official acted with disregard for the risk. *Farmer*, 511 U.S. at 836-37.

With regard to the objective component, Defendants do not dispute that Plaintiff's cervical dystonia and/or spasmodic torticollis is sufficiently serious. (Dkts. 19, 20, 22, 23, 25, 26, 27, 29, 30, 31, 32.) However, there is also no dispute that Plaintiff did, in fact, receive medical attention for this impairment. (Dkts. 19, 20, 22, 23, 25, 26, 27, 29, 30, 31, 32.) Plaintiff attaches nine

grievances, several Health Care Requests, numerous Health Care Kites, an Ombudsman letter and several other documents to his court filings. (Dkts. 25, Exs. A- X; Dkt. 30, Exs. A- Z1.) These materials indicate that Plaintiff received regular and frequent medical care. (*Id.*) It is well-settled in the Sixth Circuit that "[w]here a prisoner has received *some* medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976) (emphasis added); *see also Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011). A difference of opinion regarding medical care does not constitute a "reckless disregard for a substantial risk of human harm." *Alspaugh*, 643 F.3d at 169; *see also Almond v. Pollard*, No. 11-1555, 2011 U.S. App. LEXIS 19199, 2011 WL 4101460 at *3 (7th Cir. Sept. 15, 2011) (affirming summary judgment in a case involving a prisoner's complaints about the treatment of his back pain, explaining that the prisoner "may disagree with the course of treatment chosen, but that disagreement does not amount to deliberate indifference." (citing *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)).

  Plaintiff cannot carry his burden because there is no dispute that he received *some* medical attention. Indeed, he received regular care by both MDOC and Corizon doctors and nurses, who frequently assessed his impairments and prescribed other medications that they deemed more appropriate including Naproxen and Tylenol. (Dkt. 25, Exs. A-Z1.) All he can show is that he disagreed with the care given by Defendants. (Dkts. 1, 25, 27, 30.) Given the regular and frequent care Plaintiff received, this disagreement does not amount to reckless disregard to his medical needs. *See Porter v. Pandya et al.*, No. 09-13511-BC, 2010 U.S. Dist. LEXIS 89732 at *6 (E.D. Mich. Aug. 31, 2010) (denying Plaintiff's Motion for Leave to Amend as futile because the record simply

reflects "that Plaintiff has been receiving regular care and that Plaintiff simply continues to disagree with Defendants' conclusions regarding the specific type of pain medication that is necessary to address Plaintiff's condition and whether an MRI would serve a useful medical purpose"). As such, this Court recommends granting Defendants Holmes, Squier, Brady and Gauderer's Motions to Dismiss Plaintiff's Eighth Amendment claim. (Dkts. 19, 23.) Likewise, this Court recommends denying Plaintiff's Motion Rebutting/Replying to the Motion to Dismiss. (Dkt. 30, Pl.'s Mot.)

### C. The District Court Should Sua Sponte Dismiss Plaintiff's Eighth Amendment Claims against the MDOC Defendants

Plaintiff is a prisoner proceeding without prepayment of fees. (Dkt. 7, Order.) Thus, under 28 U.S.C. § 1915(e)(2) this Court may sua sponte dismiss Plaintiff's claims against Defendants MDOC Bureau of Health Care Services, Stieve, Duncan, Kinder, Mangus, Kopka, Pigg and Kinder if it determines that Plaintiff's Eighth Amendment allegations fail to state a claim upon which relief can be granted. Given the Court's analysis above, this Court recommends dismissal of the MDOC Defendants on this ground.

### D. The District Court Should Decline to Exercise Subject Matter Jurisdiction under 27 U.S.C. § 1367(c) of Plaintiff's Medical Malpractice Claims

This Court suggests that, rather than address the merits of Plaintiff's medical malpractice claims, it is more appropriate for the District Court to decline supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c). 28 U.S.C. § 1367(c); *see also Reed-Bey v. Pramstaller*, No. 06-10934, 2012 U.S. Dist. LEXIS 39805, at *16 (E.D. Mich. Feb. 15, 2012), *adopted by* 2012 U.S. Dist. LEXIS 39802 (E.D. Mich. Mar. 23, 2012). Under 28 U.S.C. § 1367(c), a district court may decline to exercise supplemental jurisdiction under the following circumstances:

(1) the claim raises a novel or complex issue of State law;

>  (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction;
>
>  (3) the district court has dismissed all claims over which it has original jurisdiction;
>
>  (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

This Court has already recommended dismissing the constitutional claims in this action as to all Defendants. Moreover, Plaintiff may still be within the statutory limitations period to file his state law claim in state court and fulfill the statutory requirements of the Michigan's malpractice law. *See Reed-Bey*, 2012 U.S. Dist. LEXIS 39805, at *16. Another compelling reason for declining jurisdiction is that "[u]nder Michigan statutory law, the requirements for a viable medical malpractice claim are substantial and involve, among other things, considerations of statutes of limitations, notices of intent, and affidavits of merit accompanying the complaint." *See Leonardson v. Sgt. Eric Peek*, No. 05-40046, 2009 U.S. Dist. LEXIS 2208, at *3-4 (E.D. Mich. Jan. 13, 2009). Moreover, there is conflicting authority on whether this Michigan statutory law even applies to malpractice claims in federal courts. *Jones v. Correctional Medical Servs., Inc.*, No. 1:09-cv-392, 2012 U.S. Dist. LEXIS 23412, at *83 (W.D. Mich. Feb. 24, 2012).

Under *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938), a federal court deciding a state-law claim must apply state law for all substantive issues and federal law for all procedural issues. The federal district courts in Michigan appear to be split on whether Michigan's medical malpractice statutory requirements are substantive or procedural in nature. *Compare Long v. Saginaw Valley Neurosurgery*, 411 F. Supp. 2d 701, 702 (E.D. Mich. 2006) ("[T]he authority on which the defendants rely address state procedural rules that are not applicable in federal court under the rule of *Erie R.R. Co. v. Tompkins* and its progeny") with *Jones v.*

*Correctional Medical Servs., Inc.*, 2012 U.S. Dist. LEXIS 23412, at * 83 (W.D. Mich. Feb. 24, 2012) (applying the state statutes).  Rather than having another federal court address this issue, the Court believes that judicial efficiency would be better served by declining jurisdiction and allowing Plaintiff to file his state malpractice claims in state court.  *See Reed-Bey*, 2012 U.S. Dist. LEXIS 39805, at *16; *Getter v. Jane Doe, et al.*, No. 11-12021, 2012 U.S. Dist. LEXIS 33656, at *19 (E.D. Mich. March 13, 2012) ("[I]nterests of comity weigh against the exercise of supplemental jurisdiction given the procedural requirements in Michigan for filing a medical malpractice claim."); *Palmer v. Sainz*, No. 09-12316, 2012 U.S. Dist. LEXIS 37119, at *5 n. 3 (E.D. Mich. Jan. 12, 2012) ("[T]o the extent [Plaintiff's] complaint raises state law medical malpractice claims, the court recommends that the District Court decline to exercise supplemental jurisdiction over them, and dismiss them without prejudice to [Plaintiff's] right to pursue them in state court."); *Ketola v. Clearwater*, No. 08-cv-31, 2008 U.S. Dist. LEXIS 104205, at *13-14 (W.D. Mich. Oct. 31, 2008) ("Where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the state-law claims should be dismissed without reaching their merits.").

### E.  Plaintiff Fails to State a Claim for Violations of the Fourteenth Amendment

In Plaintiff's Motion Rebutting Defendants' Motion for Summary Judgment on the Issue of Grievances, Plaintiff claims that Defendants violated his Fourteenth Amendment rights by placing him on "modified access status."  (Dkt. 27, Pl.'s Mot.)  Plaintiff's Complaint, however, contains no allegations regarding his "modified access status."  (Dkt. 1, Compl.)  As such, Plaintiff fails to state a due process violation.  Plaintiff's allegations regarding his "modified access status" are addressed further in subpart F below.

11

**F. Genuine Issues of Material Fact Exist as to whether Plaintiff Exhausted his Administrative Remedies**

If the District Court finds that Plaintiff has alleged an Eighth Amendment violation, the Court recommends denying Defendants' motions based on failure to exhaust. The MDOC Defendants offer as proof of Plaintiff's failure to exhaust, an affidavit by Richard D. Russell, Manager for the Office of Legal Affairs for MDOC. (Dkt. 20, Def.s' Mot. Summ. J., at Ex. 2.) According to Russell, Plaintiff filed one grievance since May of 2009 through Step III – ACF-10-060739-12F3. (*Id*. at 3.) Russell also testifies: "The step I grievance [for ACF-10-060739-12F3] lists the 'date of incident' as 6/14/10, does not mention any of the MDOC defendants, and does not pertain to the claims set forth in Plaintiff's complaint, which includes factual allegations taking place in 2011 – facts that occurred after plaintiff's most recent step III grievance." (*Id*.)

MDOC Defendants and Defendants Holmes, Squier, Brady and Guarderer claim this is sufficient to prevail on their failure to exhaust affirmative defense. (Dkts. 20, 22, 23.) While this may be sufficient on Defendants' burden of production, it is not sufficient on Defendants' burden of persuasion. *See Surles*, 678 F.3d at 455-56. The Court's own review of the pleadings and exhibits in this matter reveals that Plaintiff filed eight other grievances in addition to ACF-10-060739-12F3. *See* Appd'x A. Shortly after rejecting four of these grievances as duplicative, Defendant Duncan placed Plaintiff on "modified access status." (Dkt. 27, Pl.'s Mot.; Dkt. 30, Ex. Z1.) Plaintiff claims that this "modified access status" followed him to his subsequent facility – Guss Harrison Correctional Facility (ARF) – and hindered his ability to exhaust his grievances and/or file new grievances. (Dkt. 27. Pl.'s Mot.) Recently, the Sixth Circuit found that a similar assertion justified the denial of summary judgment based on a failure to exhaust absent proof that defendants did not interfere with the Plaintiff's ability to exhaust:

12

> [A] dispute of material fact exists as to whether Defendants or other MDOC employees prevented [Plaintiff] from filing grievances and exhausting his administrative remedies. In his opposition to the motion for summary judgment, [Plaintiff] explained that when he 'attempted to file a grievance to expose Defendants [sic] action of corruption etc., [Defendant] refuse[d] to file or process these grievances." Moreover, at the Step III stage of some of [Plaintiff's] re-filed grievances, he alleged that Defendants denied him access to the courts as well as the ability to exhaust his administrative remedies. Defendants presented no proof that they did not interfere with [Plaintiff's] ability to exhaust his administrative remedies. Defendants only suggest that "the number of grievances filed [by Plaintiff] as reflected in the grievance screen, actually demonstrates that despite any allegation of being prevented from utilizing the grievance system, that [Plaintiff] was able to file grievances on a more than regular basis." But such an inference does not adequately show that MDOC employees did not interfere with [Plaintiff's] ability to utilize the grievance process on certain occasions or as to particular claims. That [Plaintiff] was able to file some grievances does not mean that he was able to file all relevant grievances or that he was not prevented from timely filing the grievances.

*Id*.

The Court goes on to state that "This does not mean that a defendant must always show that he did not interfere with a plaintiff's ability to exhaust his administrative remedies. Only if the plaintiff contends that he was prevented from exhausting his remedies must the defendant present evidence showing that the plaintiff's ability to exhaust was not hindered." *Id*. at 457, n. 10. Given that Plaintiff contends he was prevented from exhausting his remedies, and Defendants present no evidence that Plaintiff's ability to exhaust was not hindered, this Court recommends that the District Court deny Defendants' Motions for Summary Judgment and/or Dismiss regarding Plaintiff's failure to exhaust. (Dkts. 20, 22, 23.)

**III.     CONCLUSION**

For the reasons set forth above, this Court RECOMMENDS that the District Court GRANT Defendant Holmes, Squier and Brady's Motion to Dismiss on the merits of Plaintiff's Eight Amendment claim (Dkt. 19), DENY the MDOC Defendants' Motion for Summary Judgment based on failure to exhaust (Dkt. 20), DENY Defendants Holmes, Squire and Brady's Motion to Dismiss based on failure to exhaust (Dkt. 22), GRANT IN PART and DENY IN PART Defendant Gauderer's Motion to Dismiss (Dkt. 23), and DENY Plaintiff's Motions Rebutting Defendants' Motions (Dkts. 27, 30). This Court also recommends sua sponte dismissing the MDOC Defendants pursuant to 27 U.S.C. § 1915(e)(2).  Lastly, this Court recommends the District Court decline jurisdiction over Plaintiff's medical malpractice claims.   As such, this Court recommends DISMISSING this case in its entirety.

**IV.  FILING OBJECTIONS**

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005).  The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830 (6th Cir. 2006) (internal quotation marks omitted); *Frontier*, 454 F.3d at 596-97. Objections are to be filed through the Case Management/Electronic Case Filing (CM/ECF) system or, if an appropriate exception applies, through the Clerk's Office. *See* E.D. Mich. LR 5.1.  A copy of any objections is to be served upon

this magistrate judge but this does not constitute filing. *See* E.D. Mich. LR 72.1(d)(2). Once an objection is filed, a response is due within fourteen (14) days of service, and a reply brief may be filed within seven (7) days of service of the response. E.D. Mich. LR 72.1(d)(3), (4).


Dated: August 17, 2012                              s/Laurie J. Michelson
                                                                        Laurie J. Michelson
                                                                        United States Magistrate Judge


## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on August 17, 2012.


                                                                      s/Jane Johnson
                                                                      Deputy Clerk

# APPENDIX A

| No. | Grievance No. | Brief Description | Relevant Date | Exhausted/ Not Exhausted |
|---|---|---|---|---|
| 1 | ACF-2010-06-0739-12F3 | Not receiving pain medications. | Step III Appeal Denied: 10-18-10 (Dkt. 25, Ex. A.) | Yes. |
| 2 | ACF | Illegible. | Illegible. | Question of fact. |
| 3 | DRF-2011-07-01222-28A | Unknown. | Step I Response: Rejected as duplicative. (Dkt. 10, Ex. Z1) | Question of fact. |
| 4 | DRF-2011-07-01221-12F | "Taken off seorquel without notice." | Step I Response: 7-8-11. "Plaintiff seen by psychiatrist on 7-6-11 and is satisfied with outcome." (Dkt. 25, Ex. C.) | Question of fact. |
| 5 | DRF 2011-05-00849-12F | Unknown. | Unknown. (Dkt. 25, Ex. J.) | Question of fact. |
| 6. | DRF-2011-08-01493-28A | DRF East/MDOC stopped medications. | Step I Response: 8-12-11 Rejected as duplicative of DRF-2011-07-01221-12F and DRF 2011-05-00849-12F. (Dkt. 25, Ex. J.) | Question of fact. |

| 7. | DRF 2011-07-01385-28A | DRF East stopped prescribing two medications. | Step I Response: 7-22-11 Rejected as duplicative of DRF-2011-07-01221-12F. (Dkt. 25, Ex. K.) | Question of fact. |
|---|---|---|---|---|
| 8. | DRF-2011-07-01419-28A | DRF East Health Care has stopped medications. | Step I Response: 7-28-11 Rejected as duplicative of DRF-2011-07-01221-12F. (Dkt. 25, Ex. L.) | Question of fact. |
| 9. | DRF-2011-08-01449-28J | DRF East Health Care has stopped medications; already filed ACF-2010-06-0739-12F3 through Step III. | Step I Response: 8-3-11  Rejected: "if dissatisfied with response it is inappropriate to file a new grievance. Your avenue is to file an appeal." (Dkt. 25, Ex. M.) | Question of fact. |